RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0029p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

ASO POLA,

        *Petitioner-Appellant,*

   *v.*

UNITED STATES OF AMERICA,

        *Respondent-Appellee.*

No. 14-5214

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
Nos. 3:09-cr-00005-1; 3:11-cv-439—Thomas B. Russell, District Judge.

Decided and Filed: February 19, 2015

Before: COLE, Chief Judge; MOORE and CLAY, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:** Kent Wicker, DRESSMAN BENZINGER LA VELLE PSC, Louisville, Kentucky, for Appellant. Candace G. Hill, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

───────────────

**OPINION**

───────────────

KAREN NELSON MOORE, Circuit Judge. Petitioner-Appellant Aso Pola wishes to appeal his federal conviction and sentence. We have not been able to review the validity of his conviction or sentence, Pola argues, because his attorney failed to file a notice of appeal as requested. *See Roe v. Flores-Ortega*, 528 U.S. 470, 480–82 (2000). Pola has served the full term of imprisonment imposed as part of his sentence, and the Immigration and Customs Enforcement ("ICE") has removed him to Canada, where he now resides. Before Pola's removal

1

and while still imprisoned, he filed a motion to vacate his sentence and requested an evidentiary hearing pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel, among other claims.  After Pola and his plea counsel, C. Fred Partin, filed affidavits, the district court denied Pola's request for an evidentiary hearing—a decision Pola now appeals.  The government asserts that we do not have jurisdiction to review Pola's appeal because he no longer suffers from an injury in fact that a favorable decision will redress.  We hold not only that we have jurisdiction, but also that the district court should have granted Pola an evidentiary hearing to develop his ineffective-assistance claim to determine whether he should be able at last to appeal his conviction and sentence.  Accordingly, we **VACATE** the district court's judgment and **REMAND** the case for an evidentiary hearing.

## I.  BACKGROUND

On January 6, 2009, a federal grand jury indicted Pola and charged him with knowingly and intentionally possessing with the intent to distribute oxycodone, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  R. 11 at 1 (Indictment) (Page ID #10).  Pola was born in Iraq, but is a citizen of Canada.  R. 136-1 at 7 (Tr. Plea Hr'g) (Page ID #697).  At the time of the indictment, Pola was in the United States as a lawful permanent resident and living in Louisville, Kentucky, with his wife and two children, all of whom are U.S. citizens.  *Id.* at 8 (Page ID #698).

On September 21, 2009, Pola entered an *Alford* plea, maintaining his innocence, but conceding that the government had sufficient evidence for a jury to find him guilty of the charged offense.  R. 50 at 1 (Change of Plea) (Page ID #185).  On February 16, 2010, the district court sentenced him to forty-six months' incarceration and three years' supervised release.  R. 136-2 at 23–24 (Tr. Sentencing Hr'g) (Page ID #755–56).  On April 19, 2010, slightly more than two months after the judgment was entered, Pola filed a notice of appeal pro se.  R. 59 at 1 (Notice of Appeal) (Page ID #222).  A panel of this court dismissed Pola's appeal for being untimely, noting that he could still "move to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, based upon his allegation that counsel provided ineffective assistance by failing to file a notice of appeal upon his explicit request."  R. 73 at 2 (6th Cir. May 13, 2011) (Page ID #321).

Pola did just that.   On August 5, 2011, Pola filed a § 2255 motion, alleging that his counsel was ineffective for failing to file a notice of appeal, among other claims.  R. 77 at 1, 8 (§ 2255 Mot.) (Page ID #333, 340).  The district court referred the case to a magistrate judge.  R. 83 at 1 (D. Ct. Order) (Page ID #476).  On September 12, 2012, the magistrate judge ordered an evidentiary hearing, appointed counsel, and ordered the U.S. Marshals to transport Pola from the correctional facility in Youngstown, Ohio, to Louisville, Kentucky, for the evidentiary hearing to be held on October 17, 2012.  R. 98 at 2 (D. Ct. Order) (Page ID #585).  Unbeknownst to the district court, the Bureau of Prisons had released Pola on September 4, 2012, and had transferred him to ICE custody.

On July 27, 2012, ICE served Pola with a notice to appear for a removal hearing.  R. 133-1 at 3 (Immigration R.) (Page ID #672).  On September 11, 2012, Pola, who did not have counsel, signed a stipulation and waiver, declining a removal hearing to contest his removability. *Id.* at 7–15 (Page ID #676–84).  In addition, Pola stipulated that he had been convicted of possession with intent to distribute oxycodone and conceded removability. *See id.* at 2, 10 (Page ID # 671, 679).  On September 19, 2012, ICE removed Pola to Canada, and therefore he could not attend the October 11 hearing.  Appellant Br. at 2.

After a flurry of filings and rescheduling orders, the district court ordered the parties to submit affidavits addressing whether Pola had asked Partin to file a notice of appeal.  R. 135 at 1 (D. Ct. Order) (Page ID #688).  In response to the court's order, Pola filed an affidavit, and the government filed an affidavit from Partin.  R. 136 at 1–2 (Pola Aff.) (Page ID #689–90); R. 138 at 1–2 (Partin Aff.) (Page ID #763–64).

On November 15, 2013, the magistrate judge issued a report and recommendation to deny both Pola's request for an evidentiary hearing and his § 2255 motion because Partin's performance was not deficient.  R. 139 at 1, 15 (Report & Recommendation) (Page ID #765, 779).  Pola filed objections, arguing that the magistrate judge had erred by recommending the dismissal of Pola's § 2255 motion without an evidentiary hearing.  R. 142 at 1–5 (Objections to Report & Recommendation) (Page ID #792–96).  The district court adopted the report and recommendations and overruled Pola's objections thereto.  R. 143 at 1–2 (D. Ct. Order) (Page ID #798–99).

Pola appeals that judgment. We granted a Certificate of Appealability limited to the issues "whether his counsel rendered ineffective assistance by failing to file a notice of appeal upon Pola's request and whether the district court erred by failing to conduct a full evidentiary hearing on the issue." *Pola v. United States*, No. 14-5214, at 4 (6th Cir. July 31, 2014).

## II. JURISDICTION

The government contends that we lack subject-matter jurisdiction to hear Pola's appeal because he no longer suffers from an "injury in fact" as a result of his federal criminal conviction. Appellee Br. at 14–15. When a federal prisoner files a § 2255 motion in federal court, he must satisfy two requirements. First, the petitioner must show that he meets the statutory definition of those who may seek § 2255 relief. Second, the petitioner must demonstrate that he has standing to seek relief from the federal courts. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "This means that, throughout the litigation, the [petitioner] must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (internal quotation marks omitted); *see also Pollard v. United States*, 352 U.S. 354, 358 (1957) (holding that petitions for certiorari are "allowed only where [the Court's] judgment will have some material effect.").

Pola has satisfied the first requirement. "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" may file a § 2255 motion. 28 U.S.C. § 2255(a). A petitioner who has served the full term of his sentence still satisfies the in-custody requirement of § 2255 provided he filed the motion while incarcerated and shows that he "is suffering, and will continue to suffer, serious disabilities"—collateral consequences—as a result of the conviction. *Carafas v. LaValleee*, 391 U.S. 234, 238–39 (1968).

When a petitioner challenges the constitutionality of his conviction,[1] we presume he will experience lasting collateral consequences. *See Spencer*, 523 U.S. at 12 ("In the context of criminal conviction, the presumption of significant collateral consequences is likely to comport

---

[1]We do not presume that a petitioner has satisfied the case-or-controversy requirement when he challenges the revocation of parole but does not challenge the underlying conviction. *Spencer*, 523 U.S. at 14.

with reality."); *Sibron v. New York*, 392 U.S. 40, 55–57 (1968) ("[A] criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction."). Accordingly, we may presume that Pola has satisfied the case-or-controversy requirement because he challenges the constitutionality of his criminal conviction and therefore continues to suffer the burdens of that conviction.

We note, moreover, that among the myriad collateral consequences that criminal defendants face is removal or deportation.[2] *Fiswick v. United States*, 329 U.S. 211, 221–22 (1946). Without question, Pola's conviction for possession with intent to distribute oxycodone, a controlled substance, made Pola removable under the Immigration and Nationality Act ("INA") on two separate grounds. *See* R. 133-1 at 4 (Immigration R.) (Page ID #673). The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii) (2012). Pola's conviction for possession with intent to distribute oxycodone qualifies as an "aggravated felony" within the meaning of the INA. *Id.* § 1101(a)(43)(B) (defining "aggravated felony" as including "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)."). In addition, "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." *Id.* § 1227(a)(2)(B)(i). Deportation may impose "great hardship" on people deported. *Fiswick*, 329 U.S. at 222 n.8. By removing Pola from the United States, the government has separated Pola from his wife and children and made it impossible for the family to live together in the United States.

In addition, Pola is inadmissible to the United States after his removal for his conviction. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II), (a)(9)(A)(ii)(II)–(iii). This barrier to reentry to the United

---

[2]Over the years, the Court has acknowledged many other collateral consequences that persist months or years after a petitioner has served his sentence, including limitations on the right to engage in certain businesses, the right to serve as an official in a labor union, and the right to vote, as well as the potential use of the conviction to impeach his character at any future criminal trial. *Carafas*, 391 U.S. at 237; *Sibron*, 392 U.S. at 55–56.

States and the inability to live with family are enduring injuries.[3] *See, e.g.*, *Alwan v. Ashcroft*, 388 F.3d 507, 511 (5th Cir. 2004) ("Permanent inadmissibility to the United States is a 'concrete disadvantage'; it is imposed as a matter of law and is not contingent upon any future event."); *Perez v. Greiner*, 296 F.3d 123, 126 (2d Cir. 2002) ("[A] barrier to reentry clearly would suffice to prevent [the petitioner's] habeas petition from being mooted."); *Leitao v. Reno*, 311 F.3d 453, 456 (1st Cir. 2002) (holding that ten-year or permanent bars to re-entry qualify as damaging consequences of a criminal conviction). Thus, Pola continues to suffer from an injury in fact because we may presume collateral consequences, Pola was removed from the United States, and he is now inadmissible to reenter.

The government contends that the remedy Pola seeks will not likely redress this injury because Pola stipulated that he was removable, and this stipulation would require his exclusion from the United States even if Pola's conviction were eventually vacated. *See* Appellee Br. at 18–19. We disagree.

The remedy Pola now seeks—a remand to the district court for a § 2255 evidentiary hearing to determine whether his attorney failed to file a notice of appeal upon his request—is the first, necessary step on the path toward possible vacatur of his conviction, which is the root cause of his inadmissibility to the United States. If Pola at the evidentiary hearing proves that his attorney's ineffective assistance resulted in a forfeiture of the right to appeal, then the district court must grant his § 2255 motion, and Pola will be entitled to a direct appeal of his conviction and sentence. *Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012). Subsequently, if a panel of this court vacates Pola's conviction "because of procedural or substantive defects," then his conviction will no longer qualify as a "conviction . . . for immigration purposes." *Pickering v. Gonzales*, 465 F.3d 263, 266 (6th Cir. 2006). The record establishes that Pola has alleged procedural and substantive issues that undermine the validity of his conviction. In Pola's initial, untimely notice of appeal, Pola sought a vacatur of his conviction. R. 59 at 1–2 (Notice of Appeal) (Page ID #222–23). In Pola's § 2255 motion, he raises four procedural and substantive challenges to his conviction. *See* R. 77 at 2 (§ 2255 Mot.) (Page ID #334). If Pola raises some

---

[3]If Pola were permanently inadmissible to the United States based on "a wholly separate" prior criminal conviction, then we might evaluate mootness considerations differently. *See Perez v. Greiner*, 296 F.3d 123, 126 (2d Cir. 2002).

or all of the procedural or substantive grounds on direct appeal, then a panel of this court may find that he is entitled a vacatur of the conviction and a remand for a trial. The government would be able to try Pola for the same offense, but a jury may acquit Pola. A vacatur and acquittal would eliminate the conviction that now bars his admission to the United States. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II), (a)(9)(A)(ii)(II); *id.* § 1101(a)(48)(A). This result simply is not possible without first granting Pola an evidentiary hearing under 28 U.S.C. § 2255 to address his *Flores-Ortega* claim.

The government argues that the stipulation Pola signed in which he conceded removability may still bar his admission to the United States even if Pola successfully appeals his conviction. We do not agree, however, that the stipulation is an insurmountable barrier to reentering the United States. In general, evidence of a recorded conviction is conclusive evidence of the conviction for immigration purposes. *See Barakat v. Holder*, 621 F.3d 398, 403 (6th Cir. 2010). An alien may rebut that evidence, however, with proof that a court has vacated the conviction due to "procedural or substantive infirmities." *Id.* (internal quotation marks omitted).

Moreover, although Pola has admitted that he had a conviction for immigration purposes at the time of his removal stipulation, he has not conceded that he committed the offense or that the conviction was valid. Pola has conceded only that he had been convicted of the offense of possession with intent to distribute oxycodone at the time the government issued the notice to appear; he did not agree to the factual basis for the conviction.[4] R. 133-1 at 2, 10 (Immigration R.) (Page ID #671, 679). In his stipulation, Pola "admit[ted] that all of the factual allegations contained in the Notice to Appear are true and correct," and that he was "removable as charged on the Notice to Appear." *Id.* at 10 (Page ID #679). The Notice to Appear asserted that Pola was removable because "on [February 16, 2010,] [he was] convicted . . . for the offense of Possession with Intent to Distribute Oxycodone [in violation of Title 21: 841(a)(1) & 841(b)(1)(C)]. A [forty-six-month] prison sentence was imposed for this conviction." *Id.* at 2 (Page ID #671). Pola's stipulation was, at the time, factually and legally true; he had been convicted of the drug offense. *See Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1297 (10th Cir.

---

[4]In fact, Pola has never admitted that he was guilty of the charged offense. R. 136-1 at 26 (Tr. Plea Hr'g) (Page ID #716).

2011) ("Pending post-conviction motions or other collateral attacks do not negate the finality of a conviction for immigration purposes unless and until the conviction is overturned.") (citing *Paredes v. Att'y Gen.*, 528 F.3d 196, 198–99 (3d Cir. 2008)); *United States v. Adame-Orozco*, 607 F.3d 647, 655 (10th Cir. 2010).  Therefore, Pola may be able to apply for readmission to the United States and submit a possible future order vacating his conviction and sentence as evidence to prove that he is not inadmissible.  *See Reyes-Torres v. Holder*, 645 F.3d 1073, 1077 & n.1 (9th Cir. 2011) (holding that an alien's concession that he had been convicted of an offense involving a controlled substance that was subsequently vacated "can no longer serve as a basis for removability" in an immigration proceeding).

Thus, because the § 2255 evidentiary hearing Pola requests may eventually redress his injury, his § 2255 petition is not moot.

### III.  § 2255 EVIDENTIARY HEARING

Pola's ultimate goal is to appeal his conviction and sentence, which he has not been able to do yet.  Pola claims that he missed the deadline to file a notice of appeal because Partin, his attorney, did not file a notice of appeal upon his request.  Pola has properly raised this claim in a § 2255 motion and requested an evidentiary hearing.  Without conducting an evidentiary hearing, the district court concluded that Pola could not establish that Partin did not file a notice of appeal after Pola expressly requested that Partin do so.  Pola appeals that judgment and requests that we remand this case to the district court for an evidentiary hearing.

We review the district court's decision not to conduct an evidentiary hearing for an abuse of discretion.  *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).  If a habeas petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims."  *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (internal quotation marks omitted).  The evidentiary hearing is mandatory unless "the record conclusively shows that the petitioner is entitled to no relief."  *Arredondo*, 178 F.3d at 782.  "But when a defendant presents an affidavit containing 'a factual narrative of the events that is neither contradicted by the record nor inherently incredible' and the government offers nothing more than 'contrary representations' to contradict it, the defendant is entitled to an

evidentiary hearing." *Huff*, 734 F.3d at 607 (quoting *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007)).

The Supreme Court has held that an attorney performs deficiently if, after consulting with his client, he "disregards specific instructions" from his client "to file a notice of appeal"—"a purely ministerial task." *Roe*, 528 U.S. at 477. The Court has recognized that an attorney's performance is not per se deficient simply because he does not consult with his client about the benefits and drawbacks of an appeal. *Id.* at 479. In that case, we must determine whether the attorney should have consulted with his client about an appeal because either (1) "a rational defendant would want to appeal," or (2) the "defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. To answer both questions, we must consider "all relevant factors in a given case," which may include whether the defendant pleaded guilty, thereby reducing the number of appealable issues, or whether the defendant received a sentence longer than anticipated. *Id.* If we determine that the attorney failed to file a notice of appeal either after the client's express instructions or because there is no reasonable strategic reason not to appeal, then the defendant was prejudiced because he has been deprived "of the appellate proceeding altogether" if "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 483–84.

The record before us is sparse, consisting only of the transcript of Pola's change-of-plea hearing, the transcript of Pola's sentencing hearing, and the affidavits from Pola and Partin. The district court based its decision to deny Pola's § 2255 motion and his request for an evidentiary hearing on the basis of the two affidavits alone. *See* R. 139 at 7–9 (Report & Recommendation) (Page ID #771–73). The district court concluded that Partin's affidavit was "more credible" because it provided detail that "leads to the convincing conclusion [Pola] did not instruct his attorney to file an appeal." *Id.* at 9 (Page ID #773). The district court cited Partin's recollection about unpaid attorney fees and the merits of an appeal. *Id.* In addition, the court found that Pola's "recollection [was] either flawed or his credibility is suspect" because Pola was upset about the court's decisions at sentencing, he had not paid his legal fees, and he knew that he could file an appeal pro se. *Id.*

None of the reasons the district court offered justify denying Pola an evidentiary hearing. Pola's affidavit makes factual allegations, not legal conclusions or "mere assertions of innocence." *Huff*, 734 F.3d at 607 (internal quotation marks and citation omitted). Pola stated that he "told [Partin] that [he] wanted to appeal" and explained the circumstances surrounding his decision to appeal the conviction and sentence. R. 136 at 1–2 (Pola Aff. ¶ 6) (Page ID #689–90). Pola explained that, before the sentencing hearing, he and Partin believed he would receive a nine-month sentence—the amount of time he had already served in pre-trial detention. *Id.* at 1–2 (Pola Aff. ¶ 4); R. 136-1 at 10–11 (Page ID #700–01). When the district court sentenced Pola to forty-six months' incarceration, he was "really surprised and upset." *Id.* (Pola Aff. ¶ 6). When Pola called Partin about the possibility of an appeal, Partin asked him "who was going to pay for the appeal." *Id.* (Pola Aff. ¶ 7). Pola told Partin that he would pay the balance he owed and any additional fees. *Id.* Pola asserts that, in April 2010, he learned for the first time that Partin had not filed the notice of appeal and Pola then "immediately" filed a notice of appeal. *Id.* (Pola Aff. ¶ 8).

Partin's affidavit does not directly contradict Pola's affidavit because Partin stated only that he "ha[d] no recollection of and [did] not believe that Mr. Pola ever advised [him] or instructed [him] to file a Notice of Appeal on [Pola's] behalf." R. 138 at 1 (Partin Aff. ¶ 3) (Page ID #763). The other details included in the Partin affidavit offer support for his belief that Pola did not instruct him to file a notice of appeal, but they do not conclusively establish that Pola did not make the request. Partin explained that had Pola requested an appeal, Partin would have thought there were no legitimate grounds for an appeal. *Id.* He asserted that his regular practice is to file notices of appeal if clients request that he do so. *Id.* Moreover, Partin added that he did not believe Pola asked to appeal the sentence and conviction because Pola's legal fees were overdue and he would have to pay an appellate filing fee. *Id.* All of these details add up to an inference that Pola never asked Partin to file the notice of appeal, but Partin never expressly claims that Pola did not request an appeal.

The discrepancies between these two affidavits point to three possible conclusions: Pola made the request, and Partin's memory is faulty; or Pola and Partin disagree about the substance of their conversation; or Pola never asked Partin to file the notice of appeal. Regardless, Pola

has demonstrated that there is a material factual disagreement that could be resolved at an evidentiary hearing.  We note, however, that an evidentiary hearing would also be required even if Partin affirmatively stated that Pola did not request the filing of a notice of appeal, in order to test and evaluate the apparently conflicting memories and credibility of the two affiants.

Moreover, the district court erred by considering only whether Partin was ineffective in the event that Pola did not expressly instruct his attorney to file an appeal.  The proper inquiry is to determine whether the record and affidavits suggest that one of four scenarios occurred: (1) Pola expressly requested that Partin file a notice of appeal; (2) a rational defendant in Pola's situation would want to file an appeal; (3) Pola reasonably demonstrated to Partin that he wanted to appeal his conviction and sentence; or (4) none of the above.  *See Roe*, 528 U.S. at 477–80.  We believe that Pola's affidavit and statements at his hearings in the district court suggest that a rational defendant in his situation would want to file an appeal.  In addition, the affidavits also suggest that Pola reasonably demonstrated that he wanted to file an appeal even if he did not expressly request to Partin to appeal.  Pola asserts that he and his lawyer believed that the court would sentence him to time served and probation, not further incarceration.  R. 136 at 1–2 (Pola Aff. ¶¶ 4–5) (Page ID #689–90).  At the hearing, the prosecutor confirmed this expectation:  "I think he's still thinking that he's going to get a probation supervision."  *See* R. 136-2 at 14 (Tr. Sentencing Hr'g) (Page ID #746).  In addition, the transcript reveals that Pola and Partin were not aware that the government intended to detain Pola immediately and classify him as an alien subject to deportation.  *Id.* at 4–5 (Page ID #736–37).  This was such a surprise, in fact, that Partin moved for a brief continuance, which the district court denied.  *Id.* at 6, 14 (Page ID #738, 746).  A defendant who receives a significantly longer sentence than expected may rationally want to appeal the substantive or procedural reasonableness of that sentence.

In addition, both Pola's and Partin's affidavits raise questions about whether Partin reasonably should have known that Pola wanted to file a notice of appeal.  Pola recalls that Partin inquired how Pola would pay for an appeal after he made the request to appeal.  R. 136 at 2 (Pola Aff. ¶ 7) (Page ID #690).  Partin also remembered that Pola had outstanding legal fees and thought that it would be difficult for Pola to pay for the cost of the appeal.  R. 138 at 1 (Partin Aff. ¶ 3) (Page ID #763).  The two affidavits together may suggest that there was a

miscommunication about how the fees impacted Partin's decision not to file a notice of appeal. But the record is too incomplete to determine whether Pola reasonably demonstrated to Partin a desire to appeal his conviction and sentence.

There is one final issue to address: the district court's credibility determination. Although district courts are usually in the best position to determine whether witnesses are credible, when the decision to conduct a § 2255 evidentiary hearing turns on credibility issues, then "resolution on the basis of affidavits can rarely be conclusive . . . ."[5] *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970). There is nothing in Pola's statement that undermines his credibility. Instead, the district court appears to find Pola's credibility lacking because the affidavit is "self-serving." But an affidavit is not incredible just because the asserted facts favor the affiant. *See, e.g.*, *Valentine*, 488 F.3d at 334 (holding that the district court abused its discretion by denying the petitioner an evidentiary hearing when the petitioner had provided a factual narrative of events that was not blatantly incredible); *Smith v. United States*, 348 F.3d 545, 551, 554 (6th Cir. 2004) (finding that the district court abused its discretion when it denied the petitioner an evidentiary hearing because he had only submitted "self-serving testimony" that he would have pleaded guilty had his attorney advised him of the sentencing exposure). We therefore hold that Pola is entitled to an evidentiary hearing to develop his claim because his factual narrative is not "inherently incredible," and there is nothing in the record that "conclusively shows" that Partin's performance was not deficient. *See Huff*, 734 F.3d at 608.

We recognize that Pola may have difficulty attending the hearing in person because he may not be able to enter the United States. Although § 2255 petitioners do not have an absolute right to attend evidentiary hearings, the district court may not prevent Pola from testifying in support of his claim. *Sanders v. United States*, 373 U.S. 1, 20–21 (1963). It appears there are at least two possible solutions. Pola may request that the Attorney General authorize Pola's admission to the United States, subject to conditions, for the limited purpose of attending the evidentiary hearing. *See* 8 U.S.C. § 1182(d)(3)(A). We also see no reason why the district court cannot use telecommunication and video technology so that Pola may testify and appropriately

---

[5]When the judge ruling on the § 2255 motion also conducted the trial, then the judge may rely on her recollections of the trial to assess the credibility of the affidavits. *Arredondo*, 178 F.3d at 782. That is not the case here; the magistrate judge and district judge who considered Pola's request for a § 2255 evidentiary hearing have never even seen Pola, let alone had an opportunity to assess his credibility.

participate.  We leave it to the district court in the first instance to determine how best to proceed with a § 2255 evidentiary hearing.

## IV.  CONCLUSION

For the reasons expressed in this opinion, we **VACATE** the judgment of the district court and **REMAND** the case for an evidentiary hearing pursuant to 28 U.S.C. § 2255 and further proceedings consistent with this opinion.